The issue in this case is, frankly, so narrow we could probably fit it in a thimble. It's a very simple, stark question. Does the good moral character requirement in the NACARA application, does it run through the jurisdictional period of a motion to reopen, or does it end with the final administrative decision? Why do we care about when it ends? If it tells us the period tells us when it begins, then don't we just count 10 years from the time that it begins? Well, the statute is, both cases departed from the statute. The statute says it runs 10 years preceding the application, and both cases said that is sort of irrational because somebody could commit a disqualifying conviction after the application. So that's not the language for the 10 years from the application, right? Yes, it is. It is? It's precisely that. Which statute are you referring to? Both the NACARA and the cancellation. We have NACARA, but we're going to use the same language. No, they don't. Once it's immediately preceding, the other one says immediately following. That's a different language. One, you start from the end point and work backwards, and the other, you start at the start point and work forwards. Well, no. It says, Section 2, physically present in the United States for a period of not less than 7 years preceding the day of the application and has been a person of good moral character during such period, obviously referencing that statute. But, I mean, the two cases that work at the same time are the NACARA and the cancellation. The one about 7 years or the one about 10 years? Well, the NACARA is 7. I mean, the two cases, Castillo and Ortega, both deal with the cancellation statute. We're dealing with the NACARA, but I don't think there's any statutory difference in terms of the good moral character. Tell me which one. I must be missing something. I've got a different version of NACARA. Why don't you tell me which part of NACARA you're reading? Well, it's 305F, special rule for cancellation of removal. 305F? Right. 1, 2, where it talks about, you know, the physical presence statute, that's Section 2, and then references has been a person of good moral character during such period. I mean, but certainly the two cases that we're talking about deal specifically with the notion that the good moral character is a continuing application. I think human character is continuing, and that it ends with the BIA decision. Okay. Let me read you the language. Has been physically present in the United States for a continuous period of not less than 10 years immediately following the commission of an act or the assumption of a status constituting a ground for removal. I believe that's in the non-codified NACARA Section 203B that we're concerned with. Well, no, because no. Okay. Why no? Well, because right before it, it talks about the good moral character period. I mean, here we're not dealing with aggravated felonies. We're dealing with his good moral character, which can be outside of the statute. But again, even if we were to as we're talking about. Okay. Here's what, if the language were what you were talking about, I would think that the Ortega case would apply, and that was related to the commencing from the time of the application. And the BIA came up with this interpretation that said that when a case is finally decided administratively, that relates to the application, and that's when the 10-year period is over. Okay. That's not the language we have. And it seems to me that you probably lose, if this were that statute, if this were the Ortega case, because the BIA would have given an interpretation that was entitled to Chevron deference, and you would have a hard time getting out of it. You have a different statute. And if you have nothing to say about this statute or why it's different from the statute that was discussed in the Ortega case, then you really don't have anything to say. Well, I'm not sure. All right. Well, what do you want to say? Well, I mean, certainly the Board took it as a given that the good moral character would end with the administrative decision. They were not – I mean, that's not what's before us. The Board didn't say, oh, gee, this isn't even applicable. They said, we agree, you can show good moral character. We say it stops at the decision of the Board, and we're not going to accept your rule of leniency that it should accrue through the motion to reopen the court. Well, why shouldn't it stop at the decision of the Board? Well, there's no earthly reason it should. You know, the – Well, why not? If it's an administrative decision and the final decision is by the Board, then why shouldn't it stop there? Why should it continue? Because there is just – You want it to continue through the period of the time for asking for reopening. For a motion to reopen. It's not – Well, how about continuing it through the end of the Ninth Circuit appeal? Of course not. Because this, you know, Congress – Of course not. Why not? Because Congress gave the Board jurisdiction to hear a motion reopen within 90 days. It's as simple and clear and as definitive as the date of the administrative decision, right? There's nothing – you know, usually the idea is that it gives us certainty, right? We know what the date of the decision is. Well, there's certainty. 90 days from the decision is awfully certain, too, right? I mean, and indeed, in both of those cases, this issue really wasn't before them. I mean, the alien had accrued 10 years before the decision of the IJ. So it really wasn't before them. So they're not necessarily dispositive. And again, I think the rule of leniency applies. We're talking about the concept that good moral character is a continuing concept. Human character evolves. Sometimes it devolves. I agree. And so why shouldn't it, you know, continue through a period that Congress allows you to file a motion to reopen? I mean, the passage of time is used all the time in immigration, in the concept of visa petitions. Through the simple passage of time, if you're lucky enough that your visa becomes current within that 90 days, there's jurisdiction to make a motion to reopen. And so the motion to reopen, 90 days, it's over. Once it's over, you're out. And then could you file another motion to reopen if he got his 10-year period done in the next 90 days? You would be statutorily barred. The statute is very clear. You have 90 days. You have one motion to reopen. The statute is abundantly clear. Can you get one? Can you file a motion for reconsideration? You wouldn't win. Because, you know, I mean, the statute, there isn't really. Right. But is it told during that time? No. The statute is very clear. There's no statutory basis for a motion to reconsider. You have to have a new fact within 90 days of the BIA decision. So it's not we're not creating some vaporous date. We're catering a clear date. BIA decision, 90 days. It's not complicated. And I think the rule of leniency would trump Chevron, frankly, in this particular case. We're talking about distant disqualifying acts. Ordinarily, in these cases, there's some benefit to having clear, distinct lines, considering the flood of immigration cases we have, so we know what's going on. Do you have a case that says that leniency should apply here and overcome the clear distinction? I'm standing alone on this issue. It doesn't mean it shouldn't be the case. No, there's no specific case that says that. But, again, in terms of clear lines, 90 days from the BIA decision is as clear as the BIA decision, right? There's no difficulty there. If you have a calendar, you can figure it out. So, I mean, I'm not saying I don't think that is the argument that using the administrative decision creates clarity and certainty. 90 days after the decision is pretty clear, too. So I don't think that would militate against, you know, my argument. Counsel, do you want to save some time? I think I will. Okay. Before you sit down, let me just ask you to be prepared on one thing. Do you have the CFR in front of you? Do you have 8 CFR 1240.66? I don't know. Okay. All right. Good morning, Your Honors, and may it please the Court. Kylie Kane on behalf of the Attorney General. As Your Honors know, I filed a very untimely motion to take this off the calendar and place it into mediation. I wanted to explain my reasoning for that, and it's exactly because of the line of questioning that you just gave Mr. Sprowls, which is that the plain language of the statute that Mr. Mendoza is under is the 10-year statute, which does not have the same language as matter of Ortega, cancellation of removal, or even for NACARA special rule cancellation of removal for folks who do not have criminal convictions. So Mr. Mendoza is under this separate provision that doesn't have the same language talking about when the application is filed. Okay. Do you have a copy of the regulations in front of you? I do, yes. Okay. So you have the 1240.66? Yes. Okay. Because it seems to me that Mr. Sprowls was referring to 1240.66B2. Right. Which is a 7-year provision that does have language similar to the language at issue in Ortega. Correct. And I thought that we were under C2, which is the 10-year provision that has different language. You are correct. Okay. We are under C. So it is C2. Yes. Now, if it's C2, counsel, then isn't it obvious that you have to start from when the crime was committed and count 10 years from that point? This is exactly what was giving me heartburn, because it's obvious from the language of the statute and the regulation, and there's also a Ninth Circuit decision, 2011, albeit unpublished, that applies the plain language of the statute and the regulation and counts forward from the date of entry. The heartburn I had about this is that that's not what the Board did in Mr. Mendoza's case. The Board sided Ortega. Right. So the Board wasn't reading for comprehension. Wasn't grappling with this issue that the language is different. Right. Correct. That's what gave me pause. Do you think that we can decide this, or are you suggesting a Ventura remand? Well, here's what – I actually think that the Board probably got it wrong here in terms of applying matter of Ortega, because it doesn't apply to the language of this statute. The reason that I would actually argue that the Court can go ahead and just deny this petition is that it's harmless error, because under either calculation, Mr. Mendoza does not get the 10 years. So if you count forward, he has a disqualifying conviction. If you count backward from the date of the Board's final adjudication, he has a disqualifying conviction. He actually has two convictions for the same California statute. If we wanted to ground our decision on C-2, can we do that on our own, or do we have to let the Board take a first crack at it and tell them not to cite Ortega? Well – It's pretty – the statute looks pretty clear. It is pretty clear, and it just sort of blew through it. Yeah, and the Board did cite to C-2 in its decision, but it's not – it wasn't entirely clear to me that the Board grappled with this. So that's kind of what was giving me pause. But there is – and I gave this to Ms. Bonney just a moment ago. There is an unpublished decision, the one I just referenced, which is Asisione. So that's the 2011 decision from this Court, that it's very, very similar to Mr. Mendoza's situation in that Ms. Asisione also applied for regular cancellation of removal, as well as special rule cancellation under C-2. And there the Court did, I think, which is the exact right thing to do, that is, calculate the period of good moral character under those two separate provisions in two different ways. So for C-2 NCARA, the Court calculated it from the date of the unlawful entry forward, which is exactly what the statute and the regulations say. And for special – excuse me, for regular cancellation of removal, the Court calculated it from the final agency adjudication, which was the Board's decision backwards 10 years. And in that case, came out to find that the alien did not have good moral character under either of those two periods for those two different forms of relief. That's really where I was hoping that the Court would go today, because, again, under either formulation, Mr. Mendoza doesn't reach good moral character. Now, it's based on two different convictions. He has a 1998 conviction for receipt of stolen property and a 2000 conviction for receipt of stolen property. So it's based on the fact that he has a conviction that falls into both periods. But from our perspective, that's what the statute and the regulation require. It's pretty plain. I was just a little bit concerned with the Board not sort of identifying that, despite citing the regulatory language that does apply. If I understand your position, you're not suggesting that the – your adversary has raised this issue at all? No. I don't think either of the briefs, including the government's brief,  So from our perspective, that issue is waived. What you're suggesting is that we overcome the waiver and deal with this issue even though it makes no difference to the outcome of the case. Well, I just didn't want the Court to issue a decision based on what the Board said here, which I'm not – Am I right or am I wrong on that statement? Well, I think that – I'm not sure that Mr. Sprowls knew prior to coming into court today that we were under seat 2. I don't – I'm not – and I'm not going to hold him to something in the brief that he wasn't aware. I think he treated it the way the Board treated it, which is just treat it as an application for special rule cancellation, regardless of what section it's under. The trouble is, and I will fully admit that I didn't realize this either, is that the sections have two very different dates for calculating physical presence, and then by extension calculating good moral character because it refers up to the physical presence. That's why I filed the motion to put it into mediation so late, is because I was also sort of under the impression, like the Board was, that it was the same language as cancellation of removal, but it's not when you're under the criminal provisions of the NACARA special rule cancellation of removal. So kind of identifying that and realizing that the Board might not have grappled with it is really what gave me pause. So what you're saying is that we should forgive his waiver because he was misled by the Board. Is that what you're saying? I mean, not purposely misled by the Board. No, but I mean. Just misapprehended the issue. If everybody was confused, including the Board, it's hard to say that it's unforgivable for him to be confused. And, of course, waiver being a court-created doctrine, I think the court can exercise its judgment as to whether the issue should really be before the court. Now, as I understand it, the whole business with the application was it's because it's an administrative, it's from the application. The application has to be dealt with. And that's why they decided, okay, we can keep extending this right up to the time the Board decides. For cancellation of removal? For cancellation. And that that's not a reasonable basis for extending it if you're looking at something like C-2. Well, Matter of Ortega talks about more of a policy justification as well, which is that if you stop the period at the point that the alien files his application, if he does something after that during the course of the immigration judge proceeding, like lies under oath, the immigration judge wouldn't be able to use that lie against him because the period would already be cut. I see. So it's, you know, there's a little bit of a policy justification in there, too, for why the period should keep shifting along with the application. Okay. Just in case there was something that came up during the pendency of proceedings. But all of that language is based on the fact that in the statute for cancellation, it goes off the date the application was filed. The agency found that to be an ambiguous term because it's not defined and therefore came in and filled in its interpretation of what they meant by that, which was up until the point that the agency finally adjudicates the application. If we're looking at C-2, the alien has been physically present in the United States for a continuous period of not less than 10 years, immediately following the commission of the act. Then we've got the I-J saying, what is my 10 years? Right? And is that where the end of the 10 years is? Well, the 10 years counts forward under C-2 versus B-2, which is much more like the cancellation of removal statute, which the court. So it counts forward. Right. And it's counting forward. And then when are we at the end of it? We're at the end. At 10 years. 10 years following the commission of the crime. So we start with a date certain. Actually, it's not the date of the crime. Well, it's the commission of an act. Well, the commission of the act or an assumption of a status. So in the Assisi-Ohn decision, which is the unpublished decision, I think you have the site there in front of you, what the court actually went off was the date of entry because the alien entered the country illegally. So that's the point at which she assumed a status constituting a ground for removal. So it was independent of her crime. Really? It's not necessarily the crime. So that would be a much earlier date. Much earlier. And that's Mr. Mendoza's situation as well because he entered the country unlawfully in 1989. Well, what's the or do in this case, commission of act or the assumption of a status? You read the – should we give him the benefit with the or and count it from the commission of the act? What do you do with the or? Oh, like which is earlier. Hmm. Well, if that's – and if that's the case, won't the assumption of the status always be? Well, no. Be the earlier? If someone entered legally, like on a visitor visa or something like that, it could be possible that the commission of a crime came first. Okay. You came in on a student visa, overstayed your student visa, but – and then committed the crime like a student. Exactly. Yeah. Okay. So it wouldn't always be the unlawful entry. But in general it will be. I would say most often it would be, particularly for NACARA applicants because the whole purpose here was that this class of aliens from certain countries was fleeing persecution in their country. So many, many of them came in unlawfully. And then Congress sort of provided a remedy for them to fix that unlawfulness out of humanitarian concern for their situation. So is there anything anywhere that – from the board that tells us how to read the or there? Not in Mr. Mendoza's case, no. And I don't really know of many cases from the board, from the court, or from any of the sister circuits that address C2. It's – that's why this CCO decision came up kind of late, in fact, was because I was just then going around searching for any decision that referenced C2 at all. It doesn't seem that there are that many decisions that grapple with the criminal NACARA provisions that we have here. Okay. Sorry. So in Mr. Mendoza's case, does he – does – which of those prongs under 2, C2, does he – disqualifies him? I think it's the assumption of a status constituting a ground for removal, which would be a state of injury. And it doesn't qualify if we follow the commission of the act? Also the commission of the act. So under either prong. Yes. Yeah. And so that – that's really where I came out on this was harmless error as far as what the board has done. Because no matter how you construe any of the statutes or any of the reasoning in matter of Ortega, Mr. Mendoza still has a problem with tenure. Okay. He enters the United States in when? 1989. 1989. Yes. Okay. And the commission of the act is? There are two, Your Honor. Okay. There's one in April of 1998. Okay. So that cuts him at 10 years from the date of entry. Okay. There's also one in June of 2000. That cuts him off if you count backwards from the date of the application under the matter of Ortega reasoning. So that's why it's – it doesn't – The application is when? The application was filed on April 20, 2007. Immigration judge denied it in May of 2008. And the board denied his appeal from that decision March 2010. So if we go from the most liberal construction, which would be the board's decision, March – he needs to go back March 2000, but he has a June 2000 conviction. Right. So he's out from there. He just barely misses it, which is why he applies when he does. Exactly. Yep. So I can't find any permutation of these calculations where he would be eligible. But your position is he would be disqualified under the – or the second prong anyway. Yeah. And I think that really needs to go from the date of your unlawful status, which in his case is when he entered the country. I really do think that that's what that means. Assumption of a status that constitutes a ground for removal. The second he walked across the border without authorization, he was in a status that constitutes a ground of removal. Let me – let me just ask you to address his view, is that, well, if you're going to do this liberal thing where you go from 2010 and count backwards, why don't you go from the 90 days and count backwards? Can you just address that? Yes. I think the strongest argument against that is that the passage of time is not new evidence, and that's what you need to file a motion to reopen. So an alien does have a statutory right to remain in the United States and a statutory right to file a motion to reopen within 90 days, but there are requirements to that, and one of the requirements is that you have to present new evidence. Now, in support of this, I've also given Ms. Bonney supplemental authority, again, unpublished from this Court, but it's in 2012. That is the Gonzales case where the Court held exactly that, that where the Board said the passage of time is not new evidence, the Board did not abuse its discretion in denying an applicant for NACARA special rule cancellation of removal. So in other words, the Court agreed that the Board is allowed to deny a motion to reopen, and that is timely where the only thing new presented is the fact that time has ticked off the clock. That's the best support I could find, unfortunately, unpublished in that case. Any other? We've taken you well over your time, but we appreciate you helping us through this. Of course. I don't think there are any further questions. We thank the Government for this argument. Thank you very much. Thank you, Ms. Cain. Thank you. Mr. Sprouls. Thank you, ladies and gentlemen. In terms of the statute that I was talking about, let me say whoops. Very briefly on the or issue, that can't be the case that entering illegally would make you ineligible for NACARA. That means 100 percent of all NACARA applicants would be ineligible. Everyone entered unlawfully. It has to be. That's an or. That's disjunctive. It has to be. Otherwise, everyone would be ineligible for NACARA, right? There's nobody. I can promise you, you go to any courtroom, there's nobody who is in status. They're all unlawful. Right. It just means you get ten years to do it. Right. And again, I want to be sure. We're talking about the cutoff of the 2000 conviction. The 98 conviction does not cut him off. That is a misdemeanor. It falls under the petty offense exception under the plain language of the proper statute. He is not inadmissible or deportable under 212A2 because it's the petty offense exception. He's not removable under 237A2 because it was committed more than five years after his entry. So we're talking about the commission of the act, which is 621. It may even be sooner because I only have the conviction. I don't have the complaint. Are you talking about 621-2000? 621-2000, decision of the board, 628, so we're talking about seven days. And so it's not altogether clear. The other, I mean, I think that some of these issues were not addressed and remand might well be appropriate. And, of course, I would like that because then we wouldn't have a final administrative decision and then arguably that would trigger eligibility. But, again. Wait a minute. You think that if we remand it to the board that we wouldn't have a final BIA decision again. They would have to address it, right, so the case would be opened, at which point I believe we would have more than 10. This is outcome determinative, I grant you. But, I mean, if that were to happen, I think clearly. That's a pretty bizarre circumstance. Well, no, but once the case is reopened, you don't have a final administrative decision anymore. Right? Say, for instance, if he got married or something, he could file another motion to reopen. Once the case is reopened, that BIA decision is no longer final. Okay. But this is not a case where the statute is being calculated based on the time of the application. No. In this case, if we, I mean, we're only seven days off based on the calculation of the proper statute. If this case were to be reopened, I'd be well within the NACARA washout, which is my colloquial way of defining this. This is for people who have crimes and they have, you know, haven't committed disqualifying offenses 10 years from that date. And if this case were to be reopened, he would be thus eligible, if that were to happen. Again, because I do think, error on the part of the Board, perhaps on mine as well, that the precise statute really wasn't addressed. So I do think a remand would be legally proper. And in terms of equity, I would like it very much. Okay. I think we understand the argument. Thank you very much. Thank you, counsel, for the argument. The Mendoza v. Holder is submitted.
judges: Restani, Wallace, Bybee